**UNITED STATES of America, Plaintiff**

v.

**Joseph Adam BERCIER, Defendant.**

**NO: CR-13-102-RMP**

United States District Court,
E.D. Washington.

Signed June 24, 2016

---

**2.** As the Court noted at the hearing in this case, the quality of the briefing and argu-

ments in this case was refreshing.

1144

George J.C. Jacobs, III, U.S. Attorney's Office, Spokane, WA, for Plaintiff.

ORDER GRANTING 28 U.S.C. § 2255
MOTION TO VACATE
SENTENCE

## ***U.S. MARSHALS SERVICE ACTION REQUIRED***

ROSANNA MALOUF PETERSON,
United States District Judge

BEFORE THE COURT is Defendant's Motion to Vacate Sentence in Light of *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), ECF No. 48. The Court has reviewed the motion, the response memorandum (ECF No. 53), the reply memorandum (ECF No. 54), has heard argument from counsel, and is fully informed.

## BACKGROUND

On July 10, 2013, Defendant was charged with Felon in Possession of Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). ECF No. 1. On November 7, 2013, the Government filed an Information Superseding Indictment, charging Defendant with the same offense in addition to various forfeiture allegations. ECF No. 26. Defendant pleaded guilty to the charge on November 7, 2013. ECF Nos. 27 and 29. In the plea agreement, the Government agreed to recommend "that the Court impose a sentence within the applicable sentencing guideline range ultimately determined by the Court." ECF No. 27 at 6–7. Defendant was "free to make recommendations in regards to length of incarceration and placement in any Bureau of Prisons ("BOP") program(s) for which BOP determines he is eligible." *Id.* at 7. Further, the plea agreement noted that

[i]n return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive the right to appeal the sentence if the Court imposes a prison term of no longer than 63 months, imposes a term of supervised release of no longer than 3

years, waives the imposition of a fine, and impose a $100 penalty assessment. *Id.* at 8. The plea agreement also noted that "[n]othing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255." *Id.*

In preparation for sentencing, the United States Probation Office compiled a Presentence Investigation Report. ECF No. 34. The Probation Officer concluded that Defendant's Base Offense Level was 20, based on the application of U.S.S.G. § 2K2.1(a)(4)(A). *Id.* at 7. The Probation Officer found that Defendant triggered a heightened Base Offense Level because Defendant has been previously convicted of a felony that constituted a "crime of violence." *Id.* Defendant had a prior conviction for second-degree robbery, at the time a "crime of violence" under U.S.S.G. § 4B1.2(a)(2). *Id.* After a four level enhancement for possessing ammunition in connection with another felony offense and a three level downward adjustment for acceptance of responsibility, the Probation Office recommended that Defendant's Total Offense Level was 21. *Id.* at 7–8.

Defendant was sentenced on February 5, 2014. ECF No. 40. At the sentencing hearing, the Court rejected the proposed four level enhancement and calculated Defendant's Total Offense Level to be 17. ECF No. 42 at 1. When coupled with Defendant's Criminal History Category of VI, the Sentencing Guidelines recommended an imprisonment range of 51 to 63 months. *Id.* The Court sentenced Defendant to 51 months of imprisonment. ECF No. 41 at 2.

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569

(2015). In *Johnson*, the Court held that the residual clause of the Armed Career Criminal Act (ACCA) was unconstitutionally vague in violation of the Due Process Clause. *Id.* at 2557.

On May 19, 2016, Defendant filed a Motion to Vacate Sentence in Light of *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). ECF No. 48. Defendant argues that *Johnson*, in holding the ACCA residual clause to be unconstitutional, also invalidated the similar residual clause contained in U.S.S.G. § 4B1.2(a)(2). *Id.* at 3. Consequently, Defendant contends that he was improperly sentenced based on an invalid prior "crime of violence" and with an incorrect Base Offense Level. *Id.* The Court heard oral argument on Defendant's motion on June 22, 2016. ECF No. 59.

### ISSUE

Defendant argues that *Johnson*, in holding that the residual clause of the ACCA was an unconstitutionally vague violation of the Due Process Clause, necessarily invalidated the identical residual clause in U.S.S.G. § 4B1.2(a)(2), resulting in Defendant's having been unconstitutionally and improperly sentenced on the basis of having a prior conviction for a "crime of violence." *See generally* ECF No. 48. Defendant requests resentencing under a correct Guideline range. *Id.* at 29.

### DISCUSSION

#### I. 28 U.S.C. § 2255

[1] 28 U.S.C. § 2255(a) states that

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The claimed error of law must be "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974) (quoting *Hill v. United States*, 368 U.S. 424, 429, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)).

#### II. *Johnson v. United States*

Defendant argues that Defendant's "sentence was imposed in violation of the Constitution" following *Johnson v. United States*. ECF No. 48 at 20. The Government contends (1) that Defendant's motion is based on *Descamps v. United States*, —— U.S. ——, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013), as opposed to *Johnson*; and (2) that any new rule following *Johnson* is a non-retroactive procedural rule. *See* ECF No. 53.

#### A. Legal Basis for Defendant's Petition

The Government argues that, as Defendant cannot show that his predicate conviction was determined to be a "crime of violence" under the U.S.S.G. § 4B1.2(a)(2) residual clause, Defendant's motion is based on *Descamps*. ECF No. 53 at 4. Defendant argues that his "petition is based on *Johnson*, not *Descamps*." ECF No. 54 at 13.

The Court agrees with Defendant. Prior to *Johnson*, Defendant's second-degree robbery conviction could have been predicate "crimes of violence" under the U.S.S.G. § 4B1.2(a)(2) residual clause. *See Taylor v. United States*, 495 U.S. 575, 600 n. 9, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ("The Government remains free to argue that any offense—including offenses simi-

lar to generic burglary—should count towards enhancement as one that 'otherwise involves conduct that presents a serious potential risk of physical injury to another.' "). As such, until *Johnson* invalidated the residual clause, Defendant's predicate conviction remained a "crime of violence" through the residual clause.

Further, *Johnson*, unlike *Descamps*, provided Defendant with a mechanism through which to collaterally attack the career offender enhancement. Concerning *Descamps*, the Ninth Circuit held that "*Descamps* did not announce a new rule, and even if it did, *Descamps* is not a constitutional case." *Ezell v. United States*, 778 F.3d 762, 765–66 (9th Cir.2015). As such, *Descamps* did not provide Defendant with a means to challenge his enhanced Base Offense Level, even if such a challenge would have been unsuccessful considering the residual clause. *Johnson*, on the other hand, declared the similar ACCA residual clause unconstitutional under the Due Process Clause. *Johnson*, 135 S.Ct. at 2557.

The Court concludes that Defendant's petition is properly based on *Johnson*. The Court cannot assume, without an explicit finding, that the Court relied upon other approaches to conclude that Defendant's underlying conviction was a predicate "crime of violence."

## B. Retroactivity to the Sentencing Guidelines

█ Defendant argues that *Johnson* is a "new substantive constitutional rule that applies retroactively on collateral review to Guidelines cases." ECF No. 48 at 23. The Government, while agreeing that *Johnson* is a new rule, argues that "Defendant may not raise retroactively on collateral review the contention that his Guidelines calculation was erroneous because section 4B1.2 is unconstitutionally vague." ECF No. 53 at 14.

In *Johnson*, the Supreme Court held that the residual clause of the ACCA was an unconstitutionally vague sentencing statute in violation of the Due Process Clause. *Johnson*, 135 S.Ct. at 2557. The residual clauses in the ACCA and U.S.S.G. § 4B1.2(a)(2) are interpreted in an identical manner utilizing the same legal principles. *See United States v. Coronado*, 603 F.3d 706, 709–11 (9th Cir.2010). The Ninth Circuit has noted that *Johnson* invalidates the Sentencing Guidelines residual clause for cases on direct review. *United States v. Benavides*, 617 Fed.Appx. 790 (9th Cir. 2015).

█ Under *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), "new rules should always be applied retroactively to cases on direct review, but ... generally they should not be applied retroactively to criminal cases on collateral review." *Id.* at 303, 109 S.Ct. 1060. As such, new constitutional rules do not apply retroactively on collateral review unless one of two exceptions applies. *Id.* at 311, 109 S.Ct. 1060. "[A] new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe.' " *Id.* (quoting *Mackey v. United States*, 401 U.S. 667, 692, 91 S.Ct. 1160, 28 L.Ed.2d 404 (971) (Harlan, J., concurring)). Such "substantive" rules "include decisions that narrow the scope of a criminal statute by interpreting its terms ... as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Schriro v. Summerlin*, 542 U.S. 348, 351–52, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004).

█ Additionally, "a new rule should be applied retroactively if it requires the observance of 'those procedures that ... are implicit in the concept of ordered liberty.' " *Id.* (quoting *Mackey*, 401 U.S. at 693, 91

S.Ct. 1160 (Harlan, J., concurring)). The second exception is "reserved for watershed rules of criminal procedure." *Id.* Qualifying watershed rules implicate "the fundamental fairness and accuracy of the criminal proceeding." *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990).

Defendant argues that the Government's position is contrary to *Welch v. United States,* — U.S. —, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016). ECF No. 48 at 25. In *Welch,* the Supreme Court determined that "the rule announced in *Johnson* is substantive" and was retroactive to ACCA cases on collateral review. *Welch,* 136 S.Ct. at 1265. The Supreme Court found that *Johnson,* "[b]y striking down the residual clause as void for vagueness ... changed the substantive reach of the [ACCA], altering 'the range of conduct or the class of persons that the [Act] punishes.'" *Id.* (quoting *Schriro,* 542 U.S. at 353, 124 S.Ct. 2519)). As the residual clause "can no longer mandate or authorize any sentence ... 'even the use of impeccable factfinding procedures could not legitimate' a sentence based on that clause." *Id.* (quoting *United States v. U.S. Coin & Currency,* 401 U.S. 715, 724, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971)).

This Court finds the reasoning in *United States v. Dean,* 169 F.Supp.3d 1097, 2016 WL 1060229 (D.Or. Mar. 16, 2016), persuasive concerning *Johnson's* retroactivity in the Sentencing Guidelines context. *Dean* found that a prior Ninth Circuit decision, *Reina–Rodriguez v. United States,* 655 F.3d 1182 (9th Cir.2011) (hereinafter *Reina–Rodriguez II*), mandated the conclusion that *Johnson* retroactively applies to both ACCA and the Sentencing Guidelines. *Dean,* 169 F.Supp.3d at 1119, 2016 WL 1060229, at *16. In *Reina–Rodriguez II,*

the Ninth Circuit considered the retroactivity, on collateral review, of *United States v. Grisel,* 488 F.3d 844 (9th Cir. 2007), which held that Oregon's second-degree burglary was not categorical burglary under the ACCA. *Grisel,* 488 F.3d at 852. As noted in *Dean, Reina–Rodriguez II* "did not engage in the as-applied analysis that the Government now urges this Court to use ... [as] [t]he Ninth Circuit did not distinguish between *Grisel* in the ACCA context and *Grisel* in the Guidelines context." *Dean,* 169 F.Supp.3d at 1118, 2016 WL 1060229, at *16.

In *Reina–Rodriguez II,* the defendant challenged a 16-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii) on the basis that *Grisel* had determined that his Utah second-degree burglary conviction was no longer a qualifying "crime of violence."[1] *Reina–Rodriguez II,* 655 F.3d at 1186–87. The court found that "*Grisel* was grounded in substantive law, not criminal procedure." *Id.* at 1189. As *Grisel* "altered the conduct that substantively qualified as burglary under the categorical approach," the court found that "*Teague* does not bar retroactive application of *Grisel.*" *Id.* The court remanded for resentencing as the defendant was no longer subject to the 16-level enhancement previously triggered by the Utah second-degree burglary conviction. *Id.* at 1193.

As *Reina–Rodriguez II,* on collateral review, retroactively applied a rule holding that a certain offense was no longer an ACCA "crime of violence" to a corresponding Sentencing Guidelines provision, the Court must apply the same reasoning to U.S.S.G. § 4B1.2(a)(2). Following *Welch, Johnson* is a substantive rule retroactive to cases on collateral review. *See Welch,* 136 S.Ct. at 1265. Under binding Ninth

---

1. *Grisel* overruled *United States v. Reina–Rodriguez (Reina–Rodriguez I),* 468 F.3d 1147 (9th Cir.2006), which had held that Utah's burgla-

ry statute qualified as ACCA categorical burglary. *See Grisel,* 488 F.3d at 858 (Bea, J., dissenting).

Circuit precedent, a substantive, retroactive rule narrowing the definition of "crime of violence" under ACCA is retroactive to identical Sentencing Guidelines provisions, regardless of how the *Teague* framework might operate when applied independently in the Sentencing Guidelines context. *See In re Hubbard*, 825 F.3d 225, 233–34, 2016 WL 3181417, at *6 (4th Cir. June 8, 2016) (holding that *Johnson* is retroactive to the Sentencing Guidelines as "the government has cited no case to support the proposition that a rule can be substantive in one context but procedural in another"). Accordingly, the Court is bound to conclude that *Johnson* applies retroactively to the Sentencing Guidelines.[2]

The Government argues that *Johnson* is not a substantive rule in the Guidelines context as the Career Offender enhancement does not raise the statutory maximum sentence. However, the Supreme Court recently found that the "new rule" announced in *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), is retroactive. *See Montgomery v. Louisiana*, ⸺ U.S. ⸺, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016). In *Miller*, the Court determined that juvenile offenders cannot be subject to mandatory sentences of life without parole. *See Miller*, 132 S.Ct. at 2475. In *Montgomery*, the Court held that "prisoners like Montgomery must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored." *Montgomery*, 136 S.Ct. at 736–37. The retroactive application of *Miller* simply requires a sentencing court to hold a procedural hearing to determine if a then-juvenile defendant is incorrigible, and has no impact on the statutory maxi-

mum sentence to which the defendant would be subject. As such, new rules do not have to alter the statutory maximum sentence to be substantive and retroactive on collateral review.

▆▆▆ Additionally, the Government contends that application of the Sentencing Guidelines are merely a procedural component of sentencing. However, the Supreme Court has noted that "[a]lthough the district court has discretion to depart from the Guidelines, the court 'must consult those Guidelines and take them into account when sentencing.'" *Molina–Martinez v. United States*, ⸺ U.S. ⸺, 136 S.Ct. 1338, 1342, 194 L.Ed.2d 444 (2016) (quoting *United States v. Booker*, 543 U.S. 220, 264, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)). Further, the Guidelines "are to be the sentencing court's 'starting point and ... initial benchmark.'" *Id.* at 1345 (quoting *Gall v. United States*, 552 U.S. 38, 49, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). "The Guidelines are 'the framework for sentencing' and 'anchor ... the district court's discretion.'" *Id.* (quoting *Peugh v. United States*, ⸺ U.S. ⸺, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013)). As the Guidelines act as both the "starting point" and "lodestar" for federal sentencing proceedings, *see id.* at 1346, the Court rejects the Government's position which would relegate the Guidelines calculation to a mere formality in the overall sentencing scheme.

### C. Defendant's Underlying Conviction and U.S.S.G. § 2K2.1(a)(4)(A)

▆▆▆ At sentencing, the Court calculated Defendant's Base Offense Level to be 20 under U.S.S.G. § 2K2.1(a)(4)(A) for having "committed any part of the instant offense subsequent to sustaining one felony convic-

**2.** The Government relies upon *Hawkins v. United States*, 706 F.3d 820 (7th Cir.2013), for the proposition that retroactivity is disfavored in the Guidelines context due to a systemic interest in finality of convictions and judicial economy. *See* ECF No. 53 at 29–30. However, as noted above, the Court is bound to adhere to controlling Ninth Circuit precedent.

tion of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A); ECF No. 34 at 7. After a three level downward adjustment for acceptance of responsibility, Defendant's Total Offense Level was calculated to be 17. ECF No. 34 at 7. Defendant argues that the second-degree robbery conviction is no longer a "crime of violence" under U.S.S.G. § 4B1.2(a)(2). ECF No. 48 at 7.

 As, following *Johnson*, the residual clause is no longer an available means of finding Defendant's second-degree robbery conviction to be a "crime of violence," the Court must apply the *Descamps*, " 'three-step process' to determine whether a prior conviction is" a "crime of violence." *Lopez–Valencia v. Lynch*, 798 F.3d 863, 867 (9th Cir.2015). Under *Descamps*,

> At the first step, we compare the elements of the state offense to the elements of the generic offense defined by federal law. If this "categorical approach" reveals that the elements of the state crime are the same as or narrower than the elements of the federal offense, then the state crime is a categorical match and every conviction under that statute qualifies as a [violent] felony. When a statute is "overbroad," meaning that it criminalizes conduct that goes beyond the elements of the federal offense, we turn to step two: determining whether the statute is "divisible" or "indivisible." If the statute is indivisible, "our inquiry ends, because a conviction under an indivisible, overbroad statute can *never* serve as a predicate offense." Only when a statute is overbroad and divisible do we turn to step three—the "modified categorical approach." At this step, we may examine certain documents from the defendant's record of conviction to determine what elements of the

divisible statute he was convicted of violating.

*Id.* at 867–68.

Although robbery is not explicitly included among the U.S.S.G. § 4B1.2(a)(2) enumerated offenses, *see* U.S.S.G. § 4B1.2(a)(2) (listing burglary of a dwelling, arson, extortion, and offenses involving the use of explosives), the Government argues that "[r]obbery is specifically enumerated as a crime of violence in the commentary to § 4B1.2." ECF No. 53 at 17. The Government alternatively contends that second-degree robbery qualifies as a "crime of violence" as "generic extortion." *Id.* at 18. Further, the Government argues that second-degree robbery is a "crime of violence" as the offense has "as an element the use, attempted use, or threatened use of physical force against the person of another." *See id.* at 19 (citing U.S.S.G. § 4B1.2(a)(1)).

### 1. Robbery as Enumerated Offense

The Government argues that robbery is an enumerated offense under U.S.S.G. § 4B1.2(a)(2). *Id.* Under the § 4B1.2 Application Notes, " '[c]rime of violence' includes ... robbery." U.S. Sentencing Guidelines Manual § 4B1.2 cmt. n.1.

The Ninth Circuit has defined "generic robbery" as "aggravated larceny, containing at least the elements of misappropriation of property under circumstances involving immediate danger to the *person*." *United States v. Becerril–Lopez*, 541 F.3d 881, 891 (9th Cir.2008) (quoting *United States v. Santiesteban–Hernandez*, 469 F.3d 376, 380 (5th Cir.2006) (emphasis in original). Following *Descamps*, Washington State second-degree robbery can only be a categorical match for "generic robbery" if "the elements of the state crime are the same as or narrower than the federal offense." *See Lopez–Valencia*, 798 F.3d at 867.

In 2009, Washington State defined second-degree robbery as "[a] person is guilty of robbery in the second degree if he or she commits robbery." RCW 9A.56.210. "Robbery" was defined as

A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

RCW 9A.56.190.

In Washington State, an individual can commit second-degree robbery by "unlawfully tak[ing] personal property from the person of another ... against his will by the use or threatened use of immediate force ... to that person *or his property.*" RCW 9A.56.190 (emphasis added). As such, Washington State second-degree robbery criminalizes physical force against property, and is consequently overbroad as, under the Ninth Circuit's definition of "generic robbery," the offense must involve "immediate danger to the *person.*" *Becerril–Lopez,* 541 F.3d at 891 (internal citation omitted) (emphasis in original); *see also id.* at 891 n. 8 (finding that, concerning California statutory robbery, "we are unconvinced that a taking by threat to property necessarily entails dangers to the person"). Further, the Government admits that Washington State second-degree robbery "covers threats to property as well as to a person and the generic definition of

robbery does not." ECF No. 53 at 24. As such, Washington State second-degree robbery is not a categorical match for "generic robbery."

Under the *Descamps* second step, the Court must determine whether the Washington State second-degree robbery statute is divisible or indivisible. *Descamps,* 133 S.Ct. at 2284. A statute is "divisible" if it "comprises multiple, alternative versions of the crime [such that] a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for" the generic or non-generic form of the offense. *Id.* "[W]hile indivisible statutes may contain multiple, alternative *means* of committing the crime, only divisible statutes contain multiple, alternative *elements* of functionally separate crimes." *Rendon v. Holder,* 764 F.3d 1077, 1085 (9th Cir.2014) (emphasis in original). In order to determine whether the statute is "indivisible," the Court must determine whether "person or his property" are, following *Rendon,* separate means or elements of committing second-degree robbery.

Concerning second-degree robbery, the Washington Pattern Jury Instructions do not require a jury to unanimously agree on what or whom the defendant targeted the use or threat of physical force. *See* 11 Wash. Prac., Pattern Jury Instr. Crim. WPIC 37.04 (3d ed.) ("That the taking was against the person's will by the defendant's use or threatened use of immediate force, violence, or fear of injury to that person *[or to that person's property]*") (emphasis in original). As such, a jury is only required to unanimously conclude that a defendant used or threatened to use force against something, be it a person or that person's property. Washington State second-degree robbery, therefore, contains alternative means, as opposed to alternative elements, and is indivisible.

As Washington State second-degree robbery is not a categorical match for "robbery" and because the statute is indivisible, second-degree robbery cannot be a predicate "crime of violence" under the enumerated "robbery" offense.[3]

### 2. Extortion as Enumerated Offense

The Government notes, however, that the Court's analysis does not end at "robbery." ECF No. 53 at 24. Relying on *Becerril-Lopez*, the Government contends that hypothetical robbery scenarios that fall outside the generic definition of "robbery" are categorical matches for generic "extortion," a separate enumerated offense under U.S.S.G. § 4B1.2(a)(2). *Id.* Defendant argues that Washington State second-degree robbery is "not a categorical match for generic extortion." ECF No. 48 at 16.

■■■ "Generic extortion" is defined as "obtaining something of value from another with his consent induced by the wrongful use of force, fear, or threats." *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409, 123 S.Ct. 1057, 154 L.Ed.2d 991 (2003). Washington State second-degree robbery, however, criminalizes non-consensual takings. *See* 11 Wash. Prac., Pattern Jury Instr. Crim. WPIC 37.04 ("That the taking was against the person's will ....."). As noted by the Ninth Circuit, robbery can involve such a degree of force to "negate[ ] any possible finding that the defendant intended to take the victims' property with

their consent." *United States v. Dixon*, 805 F.3d 1193, 1196 (9th Cir.2015). As Washington State second-degree robbery criminalizes threats of force directed towards property that may involve sufficient force to negate any possible finding that the defendant intended to gain the victim's consent, Washington State second-degree robbery is not a categorical match for "generic extortion."

The Government urges the Court to follow *Becerril–Lopez*, which found that, under California law, a conviction involving a threat "not encompassed by generic robbery ... would necessarily constitute generic extortion." *Becerril–Lopez*, 541 F.3d at 892. As noted above, the Court disagrees as far as Washington State second-degree robbery is concerned. For example, the hypothetical above where the threat to property was made with such a degree of force to negate a finding of consent is not a categorical match for either "generic robbery" or "generic extortion" while nonetheless remaining criminalized by the Washington State second-degree robbery statute.

As noted above, the Washington State second-degree robbery statute is indivisible insofar as the force can be directed against a person or property. Therefore, second-degree robbery cannot be a predicate "crime of violence" as "extortion."

---

3. Alternatively, specific crimes enumerated only in the U.S.S.G. § 4B1.2 application notes are merely example offenses that previously qualified as "crimes of violence" under the now-unconstitutional residual clause. *See United States v. Soto–Rivera*, 811 F.3d 53, 60 (1st Cir.2016) ("With § 4B1.2(a) stripped of its residual clause, the government's position that we may rely on Application Note 1 to uphold Soto-Rivera's designation as a Career Offender is hopeless ... There is simply no mechanism or textual hook in the Guideline that allows us to import offenses not specifically listed therein into § 4B1.2(a)'s definition

of 'crime of violence.' "). As the Sentencing Commission enumerated only certain offenses in the text of U.S.S.G. § 4B1.2(a)(2), the Court finds that it would be inconsistent with U.S.S.G. § 4B1.2(a)(2) to unilaterally expand the number of enumerated offenses based solely on the commentary. *See Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913 , 123 L.Ed.2d 598 (1993) (holding that "commentary in the Guidelines Manual ... is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline").

### 3. Physical Force

The Government argues that Washington State second-degree robbery satisfies the "physical force" clause under U.S.S.G. § 4B1.2(a)(1). ECF No. 53 at 25. The Supreme Court has defined "physical force" as *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010) (emphasis in original). Additionally, the use of force "must be intentional, not just reckless or negligent." *United States v. Dixon*, 805 F.3d 1193, 1197 (9th Cir.2015). As noted above, Washington State second-degree robbery can be committed by threat of force against a person's property. Washington State second-degree robbery is, therefore, not a categorical match for the U.S.S.G. § 4B1.2(a)(1) definition of "physical force." Further, the Washington State second-degree robbery statute is indivisible. Therefore, second-degree robbery cannot be a predicate "crime of violence" under the "physical force" clause.

### 4. Conclusion

The Court finds that Washington State second-degree robbery is not a "crime of violence" as "generic robbery," "generic extortion," or an offense involving "physical force." As such, Washington State second-degree robbery cannot be a predicate "crime of violence" under either U.S.S.G. § 4B1.2(a)(1) or (2). Accordingly, Defendant is entitled to habeas relief under 28 U.S.C. § 2255(a).

### CONCLUSION

Having found that Defendant is entitled to relief on his *Johnson v. United States* ground for relief, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Vacate Sentence in Light of *Johnson v. United States*, —— U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), **ECF No. 48,** is **GRANTED.**

2. Defendant's sentence imposed pursuant to U.S.S.G. § 2K2.1(a)(4)(A), **ECF No. 41,** is **VACATED.**

3. Defendant will be resentenced on the underlying conviction on **August 16, 2016, at 2:00 p.m.,** in **Spokane,** Washington before the undersigned. Defendant must be present at the resentencing hearing.

4. An expedited Amended Presentence Investigation Report shall be prepared within thirty (30) days of the date of this Order reflecting this Court's ruling and without application of a U.S.S.G. § 2K2.1(a)(4)(A) based on Defendant's prior conviction for second-degree robbery. Any objections or memoranda regarding sentencing shall be filed within fourteen (14) days of the filing of the Amended Presentence Investigation Report and no later than seven days prior to resentencing.

The District Court Clerk is hereby directed to enter this order and provide copies to counsel, the U.S. Probation Office, and the U.S. Marshals Service.